# EXHIBIT A

**MBAGOLIE-FRIEDMAN, LLC**
Alan T. Friedman, Esq., (I.D. #: 032931993)
648 Newark Avenue
Jersey City, NJ 07306
P: (201) 656-8500
F: (201) 656-4703
Attorneys for Plaintiffs

**STAG LIUZZA, LLC**
Michael G. Stag, Esq.
Merritt Cunningham, Esq.
365 Canal Street, # 2850
New Orleans, LA 70130
P: (504) 593-9600
F: (504) 383-9346
Attorneys for Plaintiffs

| | |
|---|---|
| DAVID ADAMS, ANDRE COSTA, ANTHONY GALLAGHER, JONATHAN KAUTZ, DAVID MACKENZIE, CATHERINE MORALES, JOHN PANZULLO, SCOTT STOGDILL; PHILLIP ACEVEDO, LOUIS ALMAGUER, BRANDON BAILEY, MAURCEL BATTLE, LORI BEERY, ROBERT BELL, CHRISTOPHER BLEDSOE, NANCY BOWCUTT, NICOLE BRAGINTON, RANDALL BRAUN, STEVEN BRIDGE, STEPHANIE BROWN, JASON BURNETT, CHARLES CARR, BRIAN CATRON, DANIEL CLIFTON, STEVEN CLINGERMAN, MARY COMBS, FRANCIS CONRAD, SHANNON CROWELL, ERIN CULL, STEPHANIE DALE, JAMES DINGMAN, CURT DITTERICK, DONALD DOW, PATRICK DSOUZA, LEONARD FALCONE, SHERIDAN FISCHER, WILLIAM FREELAND, BRETT GALLOWAY, ROBERT GARCIA, LINDA GARLAND, WILLIAM GILLIS, ROBERT GRAUEL, JEFFREY GULLICKSON, SCOTT HAMERLINCK, CHARLES HARJO, JENNIFER HASTEDT, JAMES HAVIR, RANDALL HELDT, HARLEY HERNDON, COURTNEY HETZMAN, MARK | ) SUPERIOR COURT OF NEW JERSEY<br>)<br>)<br>)<br>) DIVISION- MORRIS COUNTY,<br>)<br>) DOCKET NO: _____<br>)<br>) CIVIL ACTION<br>)<br>)<br>)<br>**) COMPLAINT & DEMAND FOR**<br>)<br>**) JURY TRIAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

HOFFMAN, WILLIAM HOTALEN,                 )
TIMOTHY HUGHES, ARTHUR JACKSON,           )
LASHAREE JOHNSON, DWIGHT JONES,           )
LISA KENNEY, NARI KERR, NICOLE            )
KLUPENGER, JOHN KLUPENGER,                )
SAKOYA LADEAUX, LINDA LAND,               )
MICHAEL LANNING, PAUL LAPADULA,           )
BRIAN LESSLIE, CHRISTY JO LONG,           )
JOSHUA MAGES, PATRICK MARSHALL,           )
THOMAS MARTIN,, ERIN MARTINEZ-            )
NUNEZ, AMANDA MCNAIR, EMILY               )
MEACHAM, TRAVIS MINER, LEAH               )
MIOTZ, MARCUS MISTER, MONIQUE             )
NAVES, IZELL NELLON, ALICE                )
NELSON, BERNADETT ORTIZ,                  )
ANGELIKA PAUL, STACY PEREZ,               )
CAMERON PFEIL, ARNOLD RAY,                )
OLIVIA RAYMOND, VIRGINIA REEVES,          )
ELLEN RICHARDS, PATRICK                   )
ROBERTSON, JULIUS F. ROCKER, JR.,         )
JEFFREY RYMER, RITA SIMS, DEVONA          )
SINCLAIR, JAMIE SISSON, KEVIN             )
SMITH, BURNETT ST. AMANT, DAVID           )
STEELEY, WILLIAM STEPHENS, LISA           )
STIREWALT, JEREMY TARTAR,                 )
MATTHEW TAYLOR, EMERSON                   )
THOMASON, JIMMY TOM, RHONDA               )
TROTT, HALEY VANVRANKEN,                  )
MICHAEL WALSTON, CAROL WARREN,            )
MICHAEL WASILJOV, MATTHEW                 )
WELLS, TIFFANY WHEELER, HANK              )
WILLIAMS, JENNIFER WILLIS,                )
CAROLINE WOODWARD, JENNIFER               )
ZAYSZLY, JESSICA ZIELISKO                 )
                                          )
Plaintiffs,                               )
                                          )
v.                                        )
                                          )
THE 3M COMPANY (f/k/a Minnesota           )
Mining and Manufacturing Company, AGC     )
CHEMICALS AMERICAS INC., AMEREX           )
CORP, ARCHROMA U.S. INC., ARKEMA,         )
INC., BASF CORP., BUCKEYE FIRE            )
EQUIPMENT CO., CARRIER GLOBAL             )
CORP., CHEMDESIGN PRODUCTS, INC.,         )
CHEMGUARD, INC., CHEMICALS, INC.,         )

2

THE CHEMOURS CO., CHEMOURS       )
COMPANY FC, LLC, CHUBB FIRE, LTD.,   )
CLARIANT CORP., CORTEVA, INC.,       )
DEEPWATER CHEMICALS, INC., DU       )
PONT DE NEMOURS, INC., DYNAX       )
CORP., E.I. DU PONT DE NEMOURS AND   )
COMPANY, KIDDE PLC, INC.,       )
NATION FORD CHEMICAL CO.,       )
NATIONAL FOAM, INC., TYCO FIRE       )
PRODUCTS LP, UNITED TECHNOLOGIES   )
CORP., and UTC FIRE &  SECURITY       )
AMERICAS, CORP.       )
       )
Defendants.       )

## COMPLAINT

COME NOW, Plaintiffs, by and through undersigned counsel, and allege upon information and belief as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for damages for personal injury resulting from exposure to aqueous film-forming foams ("AFFF") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.      AFFF is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.      Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF with knowledge that it contained highly toxic and bio persistent PFAS, which would expose persons who came into contact with the product either directly (use as

intended) or indirectly (as an aftermath of use through air, soil, water) to the risks associated with PFAS. Further, defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

4.      PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

5.      PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS remain in the human body while presenting significant health risks to humans.

6.      Defendants' PFAS-containing AFFF were used by Plaintiffs in their intended manner, without significant change in the products' condition. Plaintiffs were unaware of the dangerous properties of Defendants' AFFF and relied on Defendants' instructions as to the proper handling of the products. Plaintiffs' consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF caused Plaintiffs to develop the serious medical conditions and complications alleged herein.

7.      Through this action, Plaintiffs seek to recover compensatory and punitive damages arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' AFFF or water contaminated with PFAS from Defendants' AFFF at various locations during the course of Plaintiffs' training and firefighting activities. Plaintiffs further seek injunctive, equitable, and declaratory relief arising from the same.

## JURISDICTION AND VENUE

8.      Defendants are subject to the jurisdiction of this Court on the grounds that (a) one or more Defendants is a foreign corporation whose principal place of business is located in the State of New

Jersey; (b) one or more Defendants is a foreign corporation that either are registered to conduct business in the State of New Jersey and have actually transacted business in New Jersey; and/or (c) one or more Defendants is a domestic corporation native to the State of New Jersey.

9.      Venue is proper pursuant to R. 4:3-2 as the causes of action arose in this county.

10.     Joinder of all parties is proper pursuant to R. 4:29-1. Defendants are permissively joined in this action because the exposure, injuries, and relief requested all arise out of or in respect of the same transaction, occurrence, or series of transactions or occurrences, and involves questions of law or fact common to all parties.

## **PARTIES**

11.     Plaintiff David Adams is a resident and citizen of Davenport, Iowa. Plaintiff regularly used, and was thereby exposed to, AFFF containing PFAS in training and to extinguish fires during Plaintiff's career as a member of the military and/or as a civilian firefighter. Plaintiff was also exposed to PFAS through ingestion of drinking water. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

12.     Plaintiff Andre Costa is a resident and citizen of Amarillo, Texas. Plaintiff regularly used, and was thereby exposed to, AFFF containing PFAS in training and to extinguish fires during Plaintiff's career as a member of the military and/or as a civilian firefighter. Plaintiff was also exposed to PFAS through ingestion of drinking water. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

13.     Plaintiff Anthony Gallagher is a resident and citizen of Lexington, Kentucky. Plaintiff regularly used, and was thereby exposed to, AFFF containing PFAS in training and to extinguish fires during Plaintiff's career as a member of the military and/or as a civilian firefighter. Plaintiff was also exposed to PFAS through ingestion of drinking water. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

14.     Plaintiff Jonathan Kautz is a resident and citizen of Boynton Beach, Florida. Plaintiff regularly used, and was thereby exposed to, AFFF containing PFAS in training and to extinguish fires during Plaintiff's career as a member of the military and/or as a civilian firefighter. Plaintiff was also exposed to PFAS through ingestion of drinking water. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

15.     Plaintiff David Mackenzie is a resident and citizen of Bowie, Maryland. Plaintiff regularly used, and was thereby exposed to, AFFF containing PFAS in training and to extinguish fires during Plaintiff's career as a member of the military and/or as a civilian firefighter. Plaintiff was also exposed to PFAS through ingestion of drinking water. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

16.     Plaintiff Catherine Morales is a resident and citizen of San Antonio, Texas. Plaintiff regularly used, and was thereby exposed to, AFFF containing PFAS in training and to extinguish fires during Plaintiff's career as a member of the military and/or as a civilian firefighter. Plaintiff was also exposed to PFAS through ingestion of drinking water. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

17.     Plaintiff John Panzullo is a resident and citizen of Irvine, California. Plaintiff regularly used, and was thereby exposed to, AFFF containing PFAS in training and to extinguish fires during Plaintiff's career as a member of the military and/or as a civilian firefighter. Plaintiff was also exposed to PFAS through ingestion of drinking water. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

18.     Plaintiff Scott Stogdill is a resident and citizen of Council Bluffs, Iowa. Plaintiff regularly used, and was thereby exposed to, AFFF containing PFAS in training and to extinguish fires during Plaintiff's career as a member of the military and/or as a civilian firefighter. Plaintiff was also exposed to PFAS through ingestion of drinking water. Plaintiff was diagnosed with thyroid disease

as a result of exposure to Defendants' AFFF products.

19.     Plaintiff Phillip Acevedo is a resident and citizen of Edcouch, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease and ulcerative colitis as a result of exposure to Defendants' AFFF products.

20.     Plaintiff Louis Almaguer is a resident and citizen of Buckeye, South Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

21.     Plaintiff Brandon Bailey is a resident and citizen of Pittsfield, Massachusetts. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer as a result of exposure to Defendants' AFFF products.

22.     Plaintiff Maurcel Battle is a resident and citizen of Columbia, South Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

23.     Plaintiff Lori Beery is a resident and citizen of St. Petersburg, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

24.     Plaintiff Robert Bell is a resident and citizen of Cave Junction, Oregon. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer as a result of exposure to Defendants'

AFFF products.

25.     Plaintiff Christopher Bledsoe is a resident and citizen of Spring, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

26.     Plaintiff Nancy Bowcutt is a resident and citizen of Shelton, Washington. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney Cancer as a result of exposure to Defendants' AFFF products.

27.     Plaintiff Nicole Braginton is a resident and citizen of Lithia, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

28.     Plaintiff Randall Braun is a resident and citizen of Fenton, Missouri. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

29.     Plaintiff Steven Bridge is a resident and citizen of Fort Myers, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

30.     Plaintiff Stephanie Brown is a resident and citizen of Atlanta, Georgia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

31.     Plaintiff Jason Burnett is a resident and citizen of San Antonio, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

32.     Plaintiff Charles Carr is a resident and citizen of Inverness, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

33.     Plaintiff Brian Catron is a resident and citizen of Charlotte, North Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

34.     Plaintiff Daniel Clifton is a resident and citizen of Prunedale, California. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

35.     Plaintiff Steven Clingerman is a resident and citizen of Urbana, Ohio. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease and ulcerative colitis as a result of exposure to Defendants' AFFF products.

36.     Plaintiff Mary Combs is a resident and citizen of Waverly, Alabama. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with Thyroid disease as a result of exposure to Defendants' AFFF products.

37.     Plaintiff Francis Conrad is a resident and citizen of Houston, Missouri. Plaintiff was

exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

38.    Plaintiff Shannon Crowell is a resident and citizen of Junction City, Kansas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

39.    Plaintiff Erin Cull is a resident and citizen of Shorewood, Wisconsin. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

40.    Plaintiff Stephanie Dale is a resident and citizen of Odenton, Maryland. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

41.    Plaintiff James Dingman is a resident and citizen of Pittsburgh, Pennsylvania. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

42.    Plaintiff Curt Ditterick is a resident and citizen of Cavalier, North Dakota. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

43.    Plaintiff Donald Dow is a resident and citizen of Clearwater, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations.

Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

44.     Plaintiff Patrick Dsouza is a resident and citizen of Hanford, California. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

45.     Plaintiff Leonard Falcone is a resident and citizen of Surprise, Arizona. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

46.     Plaintiff Sheridan Fischer is a resident and citizen of Phoenix, Arizona. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

47.     Plaintiff William Freeland is a resident and citizen of Sanford, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

48.     Plaintiff Brett Galloway is a resident and citizen of Anaheim, California. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

49.     Plaintiff Robert Garcia is a resident and citizen of Palmdale, California. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer as a result of exposure to Defendants'

AFFF products.

50.     Plaintiff Linda Garland is a resident and citizen of Chattanooga, Tennessee. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

51.     Plaintiff WIlliam Gillis is a resident and citizen of East Patchogue, New York. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer as a result of exposure to Defendants' AFFF products.

52.     Plaintiff Robert Grauel is a resident and citizen of San Antonio, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

53.     Plaintiff Jeffrey Gullickson is a resident and citizen of Elbow Lake, Minnesota. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

54.     Plaintiff Scott Hamerlinck is a resident and citizen of Cedar Rapids, Iowa. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer as a result of exposure to Defendants' AFFF products.

55.     Plaintiff Charles Harjo is a resident and citizen of Siloam Springs, Arkansas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants'

AFFF products.

56.     Plaintiff Jennifer Hastedt is a resident and citizen of Hilton Head Island, South Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease and ulcerative colitis as a result of exposure to Defendants' AFFF products.

57.     Plaintiff James Havir is a resident and citizen of Shallow Water, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

58.     Plaintiff Randall Heldt is a resident and citizen of Lake Don Pedro, California. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

59.     Plaintiff Harley Herndon is a resident and citizen of Paris, Arkansas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

60.     Plaintiff Courtney Hetzman is a resident and citizen of Palmetto, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

61.     Plaintiff Mark Hoffman is a resident and citizen of Palm Coast, FLorida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants'

AFFF products.

62.     Plaintiff William Hotalen is a resident and citizen of Conway, South Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

63.     Plaintiff Timothy Hughes is a resident and citizen of Cleveland, Georgia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

64.     Plaintiff Arthur Jackson is a resident and citizen of Daniels, West Virginia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

65.     Plaintiff Lasharee Johnson is a resident and citizen of Masoutah, Illinois. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

66.     Plaintiff Dwight Jones is a resident and citizen of Bartlett, Tennessee. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

67.     Plaintiff Lisa Kenney is a resident and citizen of Fenton Township, Michigan. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

68.     Plaintiff Nari Kerr is a resident and citizen of Henderson, Nevada. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

69.     Plaintiff Nicole Klupenger is a resident and citizen of Bonners Ferry, Idaho. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with Thyroid Cancer as a result of exposure to Defendants' AFFF products.

70.     Plaintiff John Klupenger is a resident and citizen of Bonners Ferry, Idaho. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

71.     Plaintiff Sakoya Ladeaux is a resident and citizen of Plains, Montana. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

72.     Plaintiff Linda Land is a resident and citizen of Ellicott City, Maryland. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

73.     Plaintiff Michael Lanning is a resident and citizen of Fort Cavazos, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer as a result of exposure to Defendants' AFFF products.

74.     Plaintiff Paul Lapadula is a resident and citizen of Pemberton Township, New Jersey.

Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

75.     Plaintiff Brian Lesslie is a resident and citizen of Hamilton Township, New Jersey. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

76.     Plaintiff Christy Jo Long is a resident and citizen of Cabot, Arkansas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

77.     Plaintiff Joshua Mages is a resident and citizen of Littleton, Colorado. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer as a result of exposure to Defendants' AFFF products.

78.     Plaintiff Patrick Marshall is a resident and citizen of Palm Bay, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

79.     Plaintiff Thomas Martin, is a resident and citizen of Williamston, South Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease and ulcerative colitis as a result of exposure to Defendants' AFFF products.

80.     Plaintiff Erin Martinez-Nunez is a resident and citizen of Ponder, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military

installations. Plaintiff was diagnosed with noncancer thyroid disease as a result of exposure to Defendants' AFFF products.

81.     Plaintiff Amanda Mcnair is a resident and citizen of Madill, Oklahoma. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

82.     Plaintiff Emily Meacham is a resident and citizen of Fort Myers, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

83.     Plaintiff Travis Miner is a resident and citizen of Littlefield, Arizona. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

84.     Plaintiff Leah Miotz is a resident and citizen of Renton, Washington. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

85.     Plaintiff Marcus Mister is a resident and citizen of Beavercreek, Ohio. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

86.     Plaintiff Monique Naves is a resident and citizen of Madison, Alabama. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants'

AFFF products.

87.    Plaintiff Izell Nellon is a resident and citizen of Detroit, Michigan. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

88.    Plaintiff Alice Nelson is a resident and citizen of Wimberley, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

89.    Plaintiff Bernadett Ortiz is a resident and citizen of Columbia, South Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

90.    Plaintiff Angelika Paul is a resident and citizen of Carrollton, Virgina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease and thyroid cancer as a result of exposure to Defendants' AFFF products.

91.    Plaintiff Stacy Perez is a resident and citizen of Ingleside, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

92.    Plaintiff Cameron Pfeil is a resident and citizen of Grovetown, Georgia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

93.    Plaintiff Arnold Ray is a resident and citizen of Wiggins, Mississippi. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations.

Plaintiff was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

94.    Plaintiff Olivia Raymond is a resident and citizen of Shelton, Connecticut. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

95.    Plaintiff Virginia Reeves is a resident and citizen of Ball Ground, Georgia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

96.    Plaintiff Ellen Richards is a resident and citizen of Palmetto, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

97.    Plaintiff Patrick Robertson is a resident and citizen of Junction City, Kansas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

98.    Plaintiff Julius Franklin Rocker, Jr. is a resident and citizen of Miramar, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

99.    Plaintiff Jeffrey Rymer is a resident and citizen of Clovis, California. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

100.     Plaintiff Rita Sims is a resident and citizen of Moundville, Alabama. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

101.     Plaintiff Devona Sinclair is a resident and citizen of Newnan, Georgia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

102.     Plaintiff Jamie Sisson is a resident and citizen of Tellico Plains, Tennessee. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

103.     Plaintiff Kevin Smith is a resident and citizen of St. Helena Island, South Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

104.     Plaintiff Burnett St. Amant is a resident and citizen of Rancho Cucamonga, California. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer as a result of exposure to Defendants' AFFF products.

105.     Plaintiff David Steeley is a resident and citizen of Mt. Juliet, Tennessee. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

106.     Plaintiff William Stephens is a resident and citizen of Gustine, California. Plaintiff was

exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

107.    Plaintiff Lisa Stirewalt is a resident and citizen of Sumter, South Carolina. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with Thyroid Cancer as a result of exposure to Defendants' AFFF products.

108.    Plaintiff Jeremy Tartar is a resident and citizen of Albuquerque, New Mexico. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

109.    Plaintiff Matthew Taylor is a resident and citizen of Cincinnati, Ohio. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

110.    Plaintiff Emerson Thomason is a resident and citizen of Ocala, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with testicular cancer and thyroid disease as a result of exposure to Defendants' AFFF products.

111.    Plaintiff Jimmy Tom is a resident and citizen of Godley, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

112.    Plaintiff Rhonda Trott is a resident and citizen of Pell City, Alabama. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products

113.    Plaintiff Haley Vanvranken is a resident and citizen of Rogers, Arkansas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

114.    Plaintiff Michael Walston is a resident and citizen of Cheyenne, Wyoming. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

115.    Plaintiff Carol Warren is a resident and citizen of Dallas, Georgia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

116.    Plaintiff Michael Wasiljov is a resident and citizen of Hagerstown, Maryland. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

117.    Plaintiff Matthew Wells is a resident and citizen of Commerce, Georgia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

118.    Plaintiff Tiffany Wheeler is a resident and citizen of Douglas, Georgia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer and ulcerative colitis as a result of exposure to Defendants' AFFF products.

119.    Plaintiff Hank Williams is a resident and citizen of Mayflower, Arkansas. Plaintiff was

exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

120.    Plaintiff Jennifer Willis is a resident and citizen of Clever, Missouri. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

121.    Plaintiff Caroline Woodward is a resident and citizen of Stafford, Virginia. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid disease, thyroid cancer and kidney cancer as a result of exposure to Defendants' AFFF products.

122.    Plaintiff Jennifer Zayszly is a resident and citizen of Venice, Florida. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

123.    Plaintiff Jessica Zielisko is a resident and citizen of Point Blank, Texas. Plaintiff was exposed to PFAS through ingestion of drinking water while living and/ or working at military installations. Plaintiff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

124.    Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors and sellers of PFAS-containing AFFF products or underlying PFAS containing chemicals used in AFFF production. The following Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be delivered to areas for active use by Plaintiffs during the course of training and firefighting activities.

125.    Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

126.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

127.    Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation and does business throughout the United States. AGC has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

128.    AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

129.    Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

130.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users,

produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

131.    Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

132.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

133.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

134.    Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF

containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

135.     Defendant BASF Corporation ("BASF"), is a Delaware corporation doing business throughout the United States. BASF Corporation has its principal place of business at 100 Park Ave., Florham Park, New Jersey 07932.

136.     BASF is successor-in-interest to Ciba-Geigy Corp. and Ciba Inc., which manufactured fluorosurfactants for AFFF manufacturers who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

137.     Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

138.     Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

139.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

140.    Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

141.    Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

142.    ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

143.    Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business

throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

144.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

145.    Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

146.    Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

147.    Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

148.    Chemours designed, marketed, developed, manufactured, distributed, released, trained

users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

149.    Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The Chemours Company.

150.    Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

151.    Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

152.    Chubb designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed,

manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

153. Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

154. Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

155. Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

156. Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

157. Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does

business throughout the United States. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

158.    Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

159.    Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States. DowDuPont, has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

160.    DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

161.    Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

162.    Dynax designed, marketed, developed, manufactured, distributed, released, trained users,

produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

163.    Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

164.    DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

165.    Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

166.    Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added

to AFFF which contained PFAS for use in firefighting.

167.    Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

168.    Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

169.    Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

170.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

171.    Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul

brand AFFF containing PFAS.

172.    Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

173.    Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

174.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

175.    Defendant UTC Fire & Security Americas Corporation, Inc.  (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

176.    UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

177.    When reference is made in this Complaint to any act or omission of any of Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

178.    The term "AFFF Defendant" or "AFFF Defendants" refers to all Defendants named herein who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. jointly and severally, unless otherwise stated.


## **FACTUAL ALLEGATIONS**

179.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fires.

180.    AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

181.     AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

182.     AFFF Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF containing toxic PFAS or underlying PFAS containing chemicals used in AFFF production that were used by entities around the country, including military, county, and municipal firefighting departments.

183.     AFFF Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause the contamination of Plaintiffs' blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiffs.

184.     AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

185.     PFAS are a family of chemical compounds containing fluorine and carbon atoms.

186.     PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

187.     Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

### A.     AFFF / PFAS Hazardous Effects on Humans

188.     AFFF and its components are associated with a wide variety of adverse health effects in humans.

189.     Exposure to AFFF Defendants' products has been linked to serious medical conditions

including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease and infertility.

190.    By at least the end of the 1960s, animal toxicity testing performed by some Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

191.    By at least the end of the 1960s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

192.    By at least the end of the 1970s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

193.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

194.    It was understood by AFFF Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the

precise mechanism of action by which the tumors were caused was known and would not occur in humans.

195.    By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated AFFF Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

196.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

197.    By at least the end of the 1980s, some Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

198.    By at least the end of the 1990s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

199.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS

caused each of the tumors found in animal studies had still not been identified, mandating that AFFF Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

200.    By at least 2010, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

201.    When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, AFFF Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

202.    After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, AFFF Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

203.    AFFF Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

204.    By at least the mid-2010s, AFFF Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

205.    Research and testing performed by and/or on behalf of AFFF Defendants making and/or

using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

206.    Nevertheless, AFFF Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

207.    At all relevant times, AFFF Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that AFFF Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards AFFF Defendants deem acceptable.

208.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, AFFF Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

209.     At all relevant times, AFFF Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

210.     As of the present date, blood serum testing and analysis by AFFF Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

211.     There is no naturally-occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

212.     At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiffs from discovering the existence and extent of any injuries/harm as alleged herein.

213.     At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

214.     At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiffs to the legal, toxicological, medical, or other significance and/or

41

risk from having any PFAS material in Plaintiffs' blood.

215.   At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

216.   To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

217.   To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

218.   Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

219.   Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of

the blood and/or body of Plaintiffs with PFAS, and the biopersistence and bioaccumulation of such PFAS in their blood and/or body.

220.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Plaintiffs would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiffs.

221.    Defendants did not seek or obtain permission or consent from Plaintiffs before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiffs' exposure to AFFF and the contamination of Plaintiffs' blood and/or body with PFAS materials, and resulting biopersistence and bioaccumulation of such PFAS in their blood and/or body.

### B.    Defendants' History of Manufacturing and Selling AFFF

222.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the 1960s, 3M used its fluorination process to develop AFFF.

223.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

224.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

225.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

226.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management."  3M further stated that "the presence of these materials at [] very low levels does not pose a human health or environmental risk."  In communications with the EPA at that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

227.    Following 3M's exit from the AFFF market, the remaining AFFF Defendants continued to

manufacture and sell AFFF that contained PFAS and/or its precursors.

228.   AFFF Defendants knew their customers warehoused large stockpiles of AFFF. In fact, AFFF Defendants marketed their AFFF products by touting its shelf-life. Even after AFFF Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, AFFF Defendants concealed the true nature of PFAS. While AFFF Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. AFFF Defendants further did not act to get their harmful products off the market.

229.   AFFF Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to AFFF Defendants' products containing PFAS and/or its precursors would pose a danger to human health

230.   Plaintiffs directly used, were exposed, and/or were given AFFF to help fight fires on a regular basis. Plaintiffs used and ingested water contaminated with AFFF.

231.   Plaintiffs were never informed that this product was inherently dangerous. Nor were Plaintiffs warned about the known health risks associated with this product.

232.   Plaintiffs never received or were told to use any protective gear to guard against the known dangerous propensities of this product.

233.   AFFF Defendants have known of the health hazards associated with AFFF and/or its compounds for decades and that in their intended and/or common use would harm human health.

234.   Information regarding AFFF and its compounds were readily accessible to each of the above-referenced AFFF Defendants for decades because each is an expert in the field of AFFF manufacturing and/or the materials needed to manufacture AFFF, and each has detailed information and understanding about the chemical compounds that form AFFF products.

235.    AFFF Defendants' manufacture, distribution and/or sale of AFFF resulted in Plaintiffs and other individuals who came in contact with the chemical to develop cancer.

236.    AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional materials and activities, knew, foresaw, and/or should have known and/or foreseen that Plaintiffs and those similarly situated would be harmed.

237.    AFFF Defendants' products were unreasonably dangerous and Defendants failed to warn of this danger.

## CAUSES OF ACTION

## COUNT I
## NEGLIGENCE

238.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

239.    Defendants had a duty to individuals, including Plaintiffs, to exercise reasonable ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the AFFF.

240.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the AFFF or underlying PFAS containing chemicals used in AFFF in one or more of the following respects:

a. Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiffs;

b. Failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiffs;

c.   Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiffs;

d.   Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including Plaintiffs;

e.   Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including Plaintiffs;

f.   Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning; and

g.   In selling and or distributing a product which was inherently dangerous to the public;

241.   As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II
## BATTERY

242.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

243.   At all relevant times, Defendants possessed knowledge that the AFFF containing PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio- persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious

and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiffs having PFAS in Plaintiffs' blood, and the biopersistence and bioaccumulation of such

PFAS in Plaintiffs' blood.

244.    However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiffs accumulating PFAS in Plaintiffs' blood and/or body, and such PFAS persisting and accumulating in Plaintiffs' blood and/or body.

245.    Defendants did not seek or obtain permission or consent from Plaintiffs to put or allow PFAS materials into Plaintiffs' blood and/or body, or to persist in and/or accumulate in Plaintiffs' blood and/or body.

246.    Entry into, persistence in, and accumulation of such PFAS in Plaintiffs' body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiffs' person and unreasonably interferes with Plaintiffs' rightful use and possession of Plaintiffs' blood and/or body.

247.    At all relevant times, the PFAS present in the blood of Plaintiffs originated from Defendants' acts and/or omissions.

248.    Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiffs that resulted in persisting and accumulating levels of PFAS in Plaintiffs' blood.

249.    Plaintiffs, and any reasonable person, would find the contact at issue harmful and/or offensive.

250.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiffs' blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

251.     Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful

contact with Plaintiffs' blood and/or body.

252.     The continued presence, persistence, and accumulation of PFAS in the blood and/or body

of Plaintiffs is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

253.     The presence of PFAS in the blood and/or body of Plaintiffs altered the structure and/or

function of such blood and/or body parts and resulted in cancer.

254.     As a direct and proximate result of the foregoing acts and omissions, Plaintiffs suffered

physical injury for which Defendants are therefore liable.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory,

consequential, and punitive damages, together with the costs of this action, and for such other and

further relief as this Court may deem fit, just, and proper.

## COUNT III
## FAILURE TO WARN

255.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding

paragraphs of this Complaint as if restated in full herein.

256.     The aforementioned products were sold, distributed, or otherwise put into the stream of

commerce, designed or manufactured by defendants. Plaintiffs allege that this defendant violated

the New Jersey Product Liability Act N.J.S. 2A:58C-2 et seq. in that the products were not

reasonably safe products and/or were not products that were reasonably fit, suitable and safe for

its intended uses because they were designed defectively, manufactured defectively, and/or there

were not adequate warnings provided by the manufacturer.

257.     Defendants knew or should have known:

a)  exposure to AFFF containing PFAS was hazardous to human health;

b)  the manner in which they were designing, marketing, developing, manufacturing,

distributing, releasing, training, instructing, promoting, and selling AFFF containing PFAS was hazardous to human health; and

c) the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion and selling AFFF containing PFAS would result in the contamination of Plaintiffs' blood and/or body as a result of exposure.

258.    Defendants had a duty to warn of the hazards associated with AFFF containing PFAS entering the blood and/or body of Plaintiffs because they knew of the dangerous, hazardous, and toxic properties of AFFF containing PFAS. Defendants failed to provide sufficient warning to purchasers that the use of their AFFF products would cause PFAS to be released and cause the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Plaintiffs.

259.    Adequate instructions and warnings on the AFFF containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiffs. If Defendants provided adequate warnings:

a) Plaintiffs could have and would have taken measures to avoid or lessen exposure; and

b) end users and governments could have taken steps to reduce or prevent the release of PFASs into the blood and/or body of Plaintiffs. Defendants' failure to warn was a direct and proximate cause of Plaintiffs' injuries from PFAS that came from the use, storage, and disposal of AFFF containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the AFFF a defective product.

260.    Defendants were negligent in their failure to provide Plaintiffs with adequate warnings or instruction that the use of their AFFF products would cause PFAS to be released into the blood and/or body of Plaintiffs. As a result of Defendants' conduct and the resulting contamination, Plaintiffs suffered severe personal injuries by exposure to AFFF containing PFAS.

261.    Defendants' negligent failure to warn directly and proximately caused the harm to and damages suffered by Plaintiffs.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory,

consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV
## DEFECTIVE DESIGN

262.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

263.    The aforementioned products were, sold, distributed, or otherwise put into the stream of commerce, designed or manufactured by defendants. Plaintiffs allege that this defendant violated the New Jersey Product Liability Act N.J.S. 2A:58C-2 et seq. in that the products were not reasonably safe products and/or were not products that were reasonably fit, suitable and safe for its intended uses because they were designed defectively, manufactured defectively, and/or there were not adequate warnings provided by the manufacturer.

264.    Defendants knew or should have known:

    a)  exposure to AFFF containing PFAS is hazardous to human health;

    b)  the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and

    c)  the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Plaintiffs and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiffs.

265.    Knowing of the dangerous and hazardous properties of the AFFF containing PFAS, Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF that did not contain hazardous and toxic PFAS. These alternative designs and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have reduced or prevented reasonably foreseeable harm to Plaintiff caused by Defendants' design, manufacture, marketing, distribution, and sale of AFFF containing

hazardous and toxic PFAS.

266.    The AFFF containing PFAS that was designed, manufactured, marketed, distributed, and sold by Defendants was so hazardous, toxic, and dangerous to human health that the act of designing, formulating, manufacturing, marketing, distributing, and selling this AFFF was unreasonably dangerous under the circumstances.

267.    The AFFF designed, formulated, manufactured, marketed, distributed, and sold by Defendants was defectively designed and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous.  Defendants' defective design and formulation of AFFF containing PFAS was a direct and proximate cause of the contamination of the blood and/or body of Plaintiffs and the persistence and accumulation of PFAS in Plaintiffs' blood and/or body.

268.    Defendants' defective design and formulation of AFFF containing PFAS caused the contamination described herein resulting in personal injuries to Plaintiffs. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiffs have been exposed to AFFF containing PFAS and other toxic substances and has developed cancer.

269.    Defendants' negligent failure to design a reasonably safe product directly and proximately caused the harm to and damages suffered by Plaintiffs.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V
## STRICT LIABILITY (STATUTORY)

270.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding

paragraphs of this Complaint as if restated in full herein.

271. The aforementioned products were, sold, distributed, or otherwise put into the stream of commerce, designed or manufactured by defendants. Plaintiffs allege that this defendant violated the New Jersey Product Liability Act N.J.S. 2A:58C-2 et seq. in that the products were not reasonably safe products and/or were not products that were reasonably fit , suitable and safe for its intended uses because they were designed defectively, manufactured defectively, and/or there were not adequate warnings provided by the manufacturer.

272. Plaintiffs assert any and all remedies available under statutory causes of action from Plaintiffs' states for strict liability against each Defendant.

273. Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF.

274. The AFFF was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by Defendants.

275. As a direct and proximate result of Defendants products' aforementioned defects, Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

276. Defendants are strictly liable in tort to Plaintiffs for their wrongful conduct.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI
## STRICT LIABILITY (RESTATEMENT)

277.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

278.    The aforementioned products were, sold, distributed, or otherwise put into the stream of commerce, designed or manufactured by defendants. Plaintiffs allege that this defendant violated the New Jersey Product Liability Act N.J.S. 2A:58C-2 et seq. in that the products were not reasonably safe products and/or were not products that were reasonably fit, suitable and safe for its intended uses because they were designed defectively, manufactured defectively, and/or there were not adequate warnings provided by the manufacturer.

279.    Plaintiffs bring strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

280.    As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by Defendants the AFFF product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including Plaintiffs.

281.    Defendants had available reasonable alternative designs which would have made the AFFF product safer and would have most likely prevented the injuries and damages to Plaintiffs, thus violating state law and the Restatement of Torts.

282.    Defendants failed to properly and adequately warn and instruct Plaintiffs as to the proper safety and use of Defendants product.

283.    Defendants failed to properly and adequately warn and instruct Plaintiffs regarding the inadequate research and testing of the product.

284.    Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

285.    As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the products, Plaintiffs have been injured and sustained severe and permanent pain, suffering,

disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

286.    By reason of the foregoing, Defendants are strictly liable for the injuries and damages suffered by Plaintiffs, caused by these defects in the AFFF product.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII
## FRAUDULENT CONCEALMENT

287.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

288.    Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

289.    Defendants fraudulently concealed from and/or failed to disclose to or warn Plaintiffs, and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

290.    Defendants were under a duty to Plaintiffs and the public to disclose and warn of the defective and harmful nature of the products because:

    a)    Defendants were in a superior position to know the true quality, safety and efficacy of Defendants' products;

    b)    Defendants knowingly made false claims about the safety and quality of Defendants' product in documents and marketing materials; and

    c)    Defendants fraudulently and affirmatively concealed the defective nature of Defendants' products from Plaintiffs.

291.    The facts concealed and/or not disclosed by Defendants to Plaintiffs were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase

and/or use Defendants' products.

292.     Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that Plaintiffs would use Defendants' products, Plaintiffs justifiably acted or relied upon, to Plaintiffs' detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiffs' use of Defendants' products.

293.     Defendants, by concealment or other action, intentionally prevented Plaintiffs from acquiring material information regarding the lack of safety and effectiveness of Defendants' products and are subject to the same liability to Plaintiffs for Plaintiffs' pecuniary losses, as though Defendants had stated the non-existence of such material information regarding  Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that Plaintiffs were thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

294.     As a proximate result of Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

295.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

296.     At all times relevant hereto, Defendants manufactured, marketed, labeled, and sold the

AFFF products that has been previously alleged and described herein.

297.    At the time Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

298.    Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by Plaintiffs.

299.    Plaintiffs are within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

300.    Defendants breached their implied and/or express warranties and did not meet the ex merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX
## WANTONNESS

301.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

302.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Plaintiffs.

303.    Defendants breached the duty of care owed to Plaintiffs.

304.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end

users of Defendants' AFFF products, including Plaintiffs.

305.     As a proximate and foreseeable consequent of the actions of Defendants, Plaintiffs were exposed to unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiffs' injury.

WHEREFORE, Plaintiffs pray judgments against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT X
## PUNITIVE DAMAGES

306.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

307.     Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that was done without regard to the consequences or the safety of Plaintiffs and caused the foregoing injuries upon Plaintiffs, disregarding their protected rights.

308.     Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure Plaintiffs were not exposed to PFAS which Defendants knew were linked to serious medical conditions.

309.     Defendants have caused significant harm to Plaintiffs and have demonstrated a conscious and outrageous disregard for their safety with implied malice, warranting the imposition of punitive damages.

## TOLLING OF THE STATUTE OF LIMITATIONS
### Discovery Rule Tolling

310.     Plaintiffs had no way of knowing about the risk of serious injury associated with the use of and exposure to PFAS until very recently.

311.     Within the time period of any applicable statute of limitations, Plaintiffs could not have

discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

312.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that PFAS could cause personal injury.

313.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

### Fraudulent Concealment Tolling

314.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

315.    Instead of disclosing critical safety information regarding AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

316.    This fraudulent concealment continues through present day.

317.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

### Estoppel

318.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiffs, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

319.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF and the serious risks associated with the use of and exposure to AFFF.

320.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and an award of damages against Defendants, as follows:

    a)   special damages, to include past and future medical and incidental expenses, according to proof;

    b)   past and future loss of earnings and/or earning capacity, according to proof;

    c)   past and future general damages, to include pain and suffering, emotional distress and mental anguish, according to proof;

    d)   pre-judgment and post-judgment interest;

    e)   the costs of this action; and

    f)   treble and/or punitive damages to Plaintiffs; and

    g)   granting any and all such other and further legal and equitable relief as the Court deems necessary, just and proper.

**BAGOLIE-FRIEDMAN, LLC**
Attorneys for Plaintiffs

Dated: 5/16/2025           By:  s/ *Alan T. Friedman*
                         ALAN T. FRIEDMAN

**STAG LIUZZA, LLC**
Attorneys for Plaintiffs
(Merritt Cunningham to be Admitted Pro Hac Vice)

Dated: 5/16/2025           By: s/ *Merritt Cunningham*
                         MERRITT CUNNINGHAM

**STAG LIUZZA, LLC**
Attorneys for Plaintiffs
(Michael G. Stag to be Admitted Pro Hac Vice)

Dated: 5/16/2025           By: s/ *Michael G. Stag*
                         MICHAEL G. STAG

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Alan T. Friedman is hereby designated as trial counsel in this matter.

## CERTIFICATION PURSUANT TO R. 1:7-1(b)

PLEASE TAKE NOTICE that Plaintiffs intend to utilize the Time Unit Rule at closing.

## CERTIFICATION PURSUANT TO R. 1:38-7(C)

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents in the future in accordance with Rule 1:38-7(b).

## DISCOVERY FOR DEMAND OF INSURANCE COVERAGE

The undersigned attorney for Plaintiffs hereby demand that proof of all insurance which may extend coverage to defendants for the subject incident and the limits of said coverage be furnished to plaintiffs within five (5) days of the date hereof.

## DEMAND FOR ANSWERS TO FORM C AND FORM C(4) INTERROGATORIES

PLEASE TAKE NOTICE pursuant to R. 4:17-1(b), plaintiffs demand certified answers to Form C and C(4) Uniform Interrogatories set forth in Appendix to the Rules governing Civil Practice.

## CERTIFICATION

Plaintiffs certify that the foregoing action is not the subject of any other action pending in any other court or arbitration proceeding and that no other action or arbitration proceeding is contemplated at this time. Plaintiffs further certify that no other persons are known to them who

should be joined as parties at this time.  Plaintiffs are aware that if the statements contained within this certification are knowingly false, that they may be subject to punishment.

**BAGOLIE-FRIEDMAN, LLC**
Attorneys for Plaintiffs

Dated: 5/16/2025                               By:  _s/ Alan T. Friedman_
                                                      ALAN T. FRIEDMAN

**STAG LIUZZA, LLC**
Attorneys for Plaintiffs
(Merritt Cunningham to be Admitted Pro Hac Vice)

Dated: 5/16/2025                               By: s/ _Merritt Cunningham_
                                                      MERRITT CUNNINGHAM

**STAG LIUZZA, LLC**
Attorneys for Plaintiffs
(Michael G. Stag to be Admitted Pro Hac Vice)

Dated: 5/16/2025                               By: s/ _Michael G. Stag_
                                                      MICHAEL G. STAG

# Civil Case Information Statement

## Case Details: MORRIS | Civil Part Docket# L-001145-25

**Case Type:** PRODUCT LIABILITY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: David Adams?** NO

**Are sexual abuse claims alleged by: Andre Costa?** NO

**Are sexual abuse claims alleged by: Anthony Gallagher?** NO

**Are sexual abuse claims alleged by: Jonathan Kautz?** NO

**Are sexual abuse claims alleged by: David Mackenzie?** NO

**Are sexual abuse claims alleged by: Catherine Morales?** NO

**Are sexual abuse claims alleged by: John Panzullo?** NO

**Are sexual abuse claims alleged by: Scott Stogdill?** NO

**Are sexual abuse claims alleged by: Phillip Acevedo?** NO

**Are sexual abuse claims alleged by: Louis Almaguer?** NO

**Are sexual abuse claims alleged by: Maurcel Battle?** NO

**Are sexual abuse claims alleged by: Lori Beery?** NO

**Are sexual abuse claims alleged by: Robert Bell?** NO

**Are sexual abuse claims alleged by: Christoph Bledsoe?** NO

**Are sexual abuse claims alleged by: Nancy Bowcutt? NO**

**Are sexual abuse claims alleged by: Nicole Braginton? NO**

**Are sexual abuse claims alleged by: Randall Braun? NO**

**Are sexual abuse claims alleged by: Steven Bridge? NO**

**Are sexual abuse claims alleged by: Stephanie Brown? NO**

**Are sexual abuse claims alleged by: Jason Burnett? NO**

**Are sexual abuse claims alleged by: Charles Carr? NO**

**Are sexual abuse claims alleged by: Brian Catron? NO**

**Are sexual abuse claims alleged by: Daniel Clifton? NO**

**Are sexual abuse claims alleged by: Steven Clingerman? NO**

**Are sexual abuse claims alleged by: Mary Combs? NO**

**Are sexual abuse claims alleged by: Francis Conrad? NO**

**Are sexual abuse claims alleged by: Shannon Crowell? NO**

**Are sexual abuse claims alleged by: Erin Cull? NO**

**Are sexual abuse claims alleged by: Stephanie Dale? NO**

**Are sexual abuse claims alleged by: James Dingman? NO**

**Are sexual abuse claims alleged by: Curt Ditterick? NO**

**Are sexual abuse claims alleged by: Donald Dow? NO**

**Are sexual abuse claims alleged by: Patrick Dsouza? NO**

**Are sexual abuse claims alleged by: Leonard Falcone? NO**

**Are sexual abuse claims alleged by: Sheridan Fischer? NO**

**Are sexual abuse claims alleged by: William Freeland? NO**

**Are sexual abuse claims alleged by: Brett Galloway? NO**

**Are sexual abuse claims alleged by: Robert Garcia? NO**

**Are sexual abuse claims alleged by: Linda Garland? NO**

**Are sexual abuse claims alleged by: William Gillis? NO**

**Are sexual abuse claims alleged by: Robert Grauel? NO**

**Are sexual abuse claims alleged by: Jeffrey Gullickson? NO**

**Are sexual abuse claims alleged by: Scott Hamerlinck? NO**

**Are sexual abuse claims alleged by: Charles Harjo? NO**

**Are sexual abuse claims alleged by: Jennifer Hastedt? NO**

**Are sexual abuse claims alleged by: James Havir? NO**

**Are sexual abuse claims alleged by: Randall Heldt? NO**

**Are sexual abuse claims alleged by: Harley Herndon? NO**

**Are sexual abuse claims alleged by: Mark Hoffman? NO**

**Are sexual abuse claims alleged by: William Hotalen? NO**

**Are sexual abuse claims alleged by: Timothy Hughes? NO**

**Are sexual abuse claims alleged by: Arthur Jackson? NO**

**Are sexual abuse claims alleged by: Lasharee Johnson? NO**

**Are sexual abuse claims alleged by: Dwight Jones? NO**

Are sexual abuse claims alleged by: Lisa Kenney? NO

Are sexual abuse claims alleged by: Nari Kerr? NO

Are sexual abuse claims alleged by: Nicole Klupenger? NO

Are sexual abuse claims alleged by: John Klupenger? NO

Are sexual abuse claims alleged by: Sakoya Ladeaux? NO

Are sexual abuse claims alleged by: Linda Land? NO

Are sexual abuse claims alleged by: Michael Lanning? NO

Are sexual abuse claims alleged by: Paul Lapadula? NO

Are sexual abuse claims alleged by: Brian Lesslie? NO

Are sexual abuse claims alleged by: Christy Long? NO

Are sexual abuse claims alleged by: Joshua Mages? NO

Are sexual abuse claims alleged by: Patrick Marshall? NO

Are sexual abuse claims alleged by: Thomas Martin? NO

Are sexual abuse claims alleged by: Erin Martinez-Nunez? NO

Are sexual abuse claims alleged by: Amanda Mcnair? NO

Are sexual abuse claims alleged by: Emily Meacham? NO

Are sexual abuse claims alleged by: Travis Miner? NO

Are sexual abuse claims alleged by: Leah Miotz? NO

Are sexual abuse claims alleged by: Marcus Mister? NO

Are sexual abuse claims alleged by: Monique Naves? NO

Are sexual abuse claims alleged by: Izell Nellon? NO

Are sexual abuse claims alleged by: Alice Nelson? NO

Are sexual abuse claims alleged by: Bernadett Ortiz? NO

Are sexual abuse claims alleged by: Angelika Paul? NO

Are sexual abuse claims alleged by: Stacy Perez? NO

Are sexual abuse claims alleged by: Cameron Pfeil? NO

Are sexual abuse claims alleged by: Arnold Ray? NO

Are sexual abuse claims alleged by: Olivia Raymond? NO

Are sexual abuse claims alleged by: Virginia Reeves? NO

Are sexual abuse claims alleged by: Ellen Richards? NO

Are sexual abuse claims alleged by: Julius F Rocker, Jr.? NO

Are sexual abuse claims alleged by: Patrick Robertson? NO

Are sexual abuse claims alleged by: Jeffrey Rymer? NO

Are sexual abuse claims alleged by: Rita Sims? NO

Are sexual abuse claims alleged by: Devona Sinclair? NO

Are sexual abuse claims alleged by: Jamie Sisson? NO

Are sexual abuse claims alleged by: Kevin Smith? NO

Are sexual abuse claims alleged by: Burnett St. Amant? NO

Are sexual abuse claims alleged by: David Steeley? NO

Are sexual abuse claims alleged by: William Stephens? NO

**Case Caption:** ADAMS DAVID  VS THE 3M COMPANY

**Case Initiation Date:** 05/16/2025

**Attorney Name:** ALAN TODD FRIEDMAN

**Firm Name:** BAGOLIE FRIEDMAN LLC

**Address:** 648 NEWARK AVENUE

JERSEY CITY NJ 07306

**Phone:** 2016568500

**Name of Party:** PLAINTIFF : Adams, David

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Are sexual abuse claims alleged by: Lisa Stirewalt? NO**

**Are sexual abuse claims alleged by: Jeremy Tartar? NO**

**Are sexual abuse claims alleged by: Matthew Taylor? NO**

**Are sexual abuse claims alleged by: Emerson Thomason? NO**

**Are sexual abuse claims alleged by: Jimmy Tom? NO**

**Are sexual abuse claims alleged by: Rhonda Trott? NO**

**Are sexual abuse claims alleged by: Haley Vanvranken? NO**

**Are sexual abuse claims alleged by: Michael Walston? NO**

**Are sexual abuse claims alleged by: Carol Warren? NO**

**Are sexual abuse claims alleged by: Michael Wasiljov? NO**

**Are sexual abuse claims alleged by: Matthew Wells? NO**

**Are sexual abuse claims alleged by: Tiffany Wheeler? NO**

**Are sexual abuse claims alleged by: Hank Williams? NO**

**Are sexual abuse claims alleged by: Jennifer Willis? NO**

**Are sexual abuse claims alleged by: Caroline Woodward? NO**

**Are sexual abuse claims alleged by: Jennifer Zayszly? NO**

**Are sexual abuse claims alleged by: Jessica Zielisko? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
      **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
      **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/16/2025                                                                                    /s/ ALAN TODD FRIEDMAN
Dated                                                                                         Signed

MORRIS COUNTY SUPERIOR COURT
PO BOX 910
MORRISTOWN        NJ 07963

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (862) 397-5700
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   MAY 16, 2025
                    RE:     ADAMS DAVID  VS THE 3M COMPANY
                    DOCKET: MRS L -001145 25

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON VIJAYANT PAWAR

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (862) 397-5700 EXT 75351.

      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: ALAN T. FRIEDMAN
                              BAGOLIE FRIEDMAN LLC
                              648 NEWARK AVENUE
                              JERSEY CITY      NJ 07306

ECOURTS